IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| VERONICA S. JONES, | ) | Civil No.: 3:15-cv-00539-JE |
| | ) | |
| Plaintiff, | ) | OPINION & ORDER |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293

          Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Sarah Moum
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

          Attorneys for Defendant

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. Pro. 25(d).

OPINION & ORDER - 1

JELDERKS, Magistrate Judge:

Veronica Sue Jones ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision is reversed and this case remanded for immediate calculation and payment of benefits.

## Procedural Background

Plaintiff filed her application for DIB on July 25, 2011, alleging disability beginning March 3, 2006. Tr. 114, 222. At a prior hearing, Plaintiff was adjudged not disabled through November 13, 2009; accordingly, the alleged onset date for this appeal was amended to November 14, 2011. Tr. 21, 42. After Plaintiff's claim was denied initially and on reconsideration, a hearing was convened on September 23, 2013, before Administrative Law Judge ("ALJ") Riley Atkins. Tr. 40-62. The ALJ issued a decision on October 17, 2013 finding Plaintiff not disabled. Tr. 19-32. The decision became the final decision of the Commissioner on February 2, 2015, when the Appeals Council denied Plaintiff's subsequent request for review. Tr. 1-3. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Background

Born September 15, 1963, Plaintiff was 46 years old on the initial alleged onset date. Tr. 115. Plaintiff is a high school graduate. Tr. 227. She has past relevant work as a switchboard operator, labeler/packager, certified nursing assistant, and call-center representative. Id. Plaintiff alleges disability due to asthma, fibromyalgia, back pain, osteoarthritis, knee pain, hand pain, sleep apnea, cholesterol, diabetes, high blood pressure, "sciatic nerve", and neuropathy. Tr. 115.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If

the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff met the insured status requirements through December 31, 2011, and had not engaged in substantial gainful activity since the alleged onset date, November 14, 2009. Tr. 13.

At the second step, the ALJ found Plaintiff had the following severe impairments: fibromyalgia; osteoarthritis of the bilateral knees; lumbar degenerative joint disorder; obesity; carpal tunnel syndrome; status post-right carpal tunnel release; sleep apnea; gastroesophageal reflux disease; and asthma. Tr. 22. The ALJ additionally noted that Plaintiff's allegations of left

hand issues were not substantiated by the record, and that her diabetes was well-controlled with medication. Tr. 22.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 22-23.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> [P]erform sedentary work . . . except lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 2 hours in an 8 hour day; sit for 6 hours in an 8 hour day; occasionally climb, stoop, and crouch; and must avoid moderate exposure to fumes, gases, odors, and poor ventilation.

Tr. 23.

At the fourth step of the disability analysis, the ALJ found Plaintiff was able to perform her past relevant work as a receptionist. Tr. 31.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act from the alleged onset date, November 14, 2009, through the date last insured, December 31, 2011. Tr. 32.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and

OPINION & ORDER - 5

bears the burden of establishing that a claimant can perform "other work" at step five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff raises the following issues on appeal: whether the ALJ (1) provided legally sufficient reasons to discredit several treating physicians Cheryl LaPlante, D.O., Mai Leopold, D.O., Michael Lewis, M.D., Vandy Sherbin, M.D., and Todd Ulmer, M.D., and (2) properly evaluated her subjective symptom testimony.

I.    Medical Evidence

The ALJ discredited the medical opinions of five separate treating physicians in finding Plaintiff not disabled under the Act, and credited instead the opinions of the non-examining State agency physicians. Tr. 28-31. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians.

OPINION & ORDER - 6

The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester, 81 F.3 at 830. A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). Tommasetti v. Astrue, 533 F.3d at 1035, 1040 (9th Cir. 2008). Because the doctor's opinions were contradicted by the state agency examining physicians, the operative legal standard is specific-and-legitimate. Murray, 722 F.2d at 502.

A.   Dr. Sherbin

Vandy Sherbin, M.D. was Plaintiff's pulmonologist from 2006 through the adjudicative time period, treating Plaintiff's severe asthma impairment. In September 2013, Dr. Sherbin opined that Plaintiff has intermittent, severe shortness of breath due to asthma. Tr. 513. She characterized Plaintiff's asthma attacks as "life threatening," and indicated Plaintiff can only stand or walk for an hour at a time, and less if her asthma is flaring. Tr. 514. She also noted physical limitations, attributing them to Plaintiff lacking knee cartilage, and having limited reaching range of motion ("ROM"). Id. The ALJ accorded Dr. Sherbin's opinion little weight, finding Plaintiff was not hospitalized during the adjudicative period, had a history of only mild to

moderate asthma, and that as a pulmonology specialist, she was unqualified to opine on Plaintiff's physical limitations. Tr. 29.

Plaintiff disputes each of the rationales provided by the ALJ for discounting Dr. Sherbin's opinion. First, Plaintiff concedes that although she was not hospitalized for asthma during the relevant time period, she was hospitalized for asthma mere months before and after the adjudicative period. Pl.'s Reply Br. 5-6; tr. 355, 407-414. As such, Plaintiff's allegations of suffering more than mild to moderate asthma are supported by substantial evidence.

Further, the ALJ over-simplified Plaintiff's asthma history. While one chart note indicated a history of only mild-to-moderate asthma, laboratory findings reflected moderate obstruction in December 2009 and September 2011, mild obstruction in September 2010 and March 2012, and severe obstruction in October 2012. Tr. 355, 357, 411, 540, 541. After the adjudicative period, Plaintiff was hospitalized in April 2013, and later tested for moderate obstruction in September 2013. Tr. 518, 532. Accordingly, while Plaintiff's asthma tests during the relevant time period included both mild and moderate test results, tests performed before and after the relevant time period were predominantly moderate, and the record includes a severe obstruction result several months later and a hospitalization thereafter.

When assessing medical evidence, the ALJ is tasked with considering the record as a whole. In evaluating Plaintiff's asthma, the ALJ failed to consider that Dr. Sherbin's opinion was consistent with Plaintiff's test results to the extent her asthma flares unpredictably at times, and that Plaintiff's hospitalizations before and after the period at issue were consistent with Dr. Sherbin's opinions as to the overall severity of her condition. See Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (ALJ may not simply cherry-pick evidence to support the conclusion that the claimant is not disabled). Further, Dr. Sherbin's opinion was supported by the

objective spirometry testing of record. Moreover, Dr. Sherbin's opinion was based on a seven-year treating relationship with Plaintiff, and was informed by her pulmonary specialty, which are factors the ALJ should have considered in according the opinion weight. 20 C.F.R. §§ 404.1527(c)(2); see SSR 16-3p at *4-5. Thus, the ALJ's evaluation of Dr. Sherbin's opinion regarding Plaintiff's asthma was not based on substantial evidence, and did not meet the requisite legal standard. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) ("Even when contradicted, a treating or examining physician's opinion is still owed deference and will often by entitled to the greatest weight . . . .") (citation omitted).

In contrast to the asthma restrictions, there is little objective evidence of the overhead reaching limitations Sherbin listed. Tr. 514. Specifically, Dr. Sherbin indicated in several chart notes that Plaintiff could "move all extremities well." Tr. 534, 555, 572, 588, 603, 617. Although Plaintiff argues Sherbin's records do not actually represent what they appear to represent (Pl.'s Reply 2-3), this is not an adequate basis upon which to overturn the ALJ's rational interpretation of the record, as "tenderness on examination" alone is insufficient to establish ROM limitations. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ was not required to accept the opinion regarding Plaintiff's alleged manipulative and overhead reaching limitations to the extent they were not supported by clinical findings. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

B.    Dr. Ulmer

Todd Ulmer, M.D. treated Plaintiff several times between 2008 and 2011 for bilateral knee arthritis, which the ALJ found to be a severe impairment. Tr. 359-64, 626. Dr. Ulmer opined that Plaintiff could occasionally lift or carry less than 10 pounds, could not lift or carry any weight frequently, could stand or walk for 15 minutes at a time and one hour per workday,

had some manipulative and reaching limitations, and opined she would be off-task more than eight hours per week and would miss two more days per month. Tr. 659-60. The ALJ rejected the opinion, stating that Dr. Ulmer's manipulative and postural limitations "cannot be attributed" to her bilateral knee impairment, that the limitations did not comport with the objective evidence, and that Dr. Ulmer recommended postponing surgery. Tr. 29.

The ALJ did not provide specific-and-legitimate rationales for rejecting Dr. Ulmer's medical opinion. Contrary to the ALJ's finding that Dr. Ulmer's assessment was not based on objective evidence, Dr. Ulmer reviewed x-rays from January 2011 of the left knee, which revealed "medial compartment arthritis, bone on bone . . . ." Tr. 359, 362. Based on the medical imaging, Dr. Ulmer indicated he and another doctor discussed that a "unicompartment arthroplasty" was "a very reasonable, appropriate course to pursue." Tr. 360.

Further, it was improper for the ALJ to reject Dr. Ulmer's opinion because he deferred Plaintiff's surgery. Pursuant to case law and SSA policy, it may be appropriate for an ALJ to reject a claimant's allegations of severe pain when the claimant chooses to pursue conservative treatment absent a "good" reason for doing so. Here, however, Dr. Ulmer did not recommend postponing surgery because he felt that it was not a necessary treatment, but because Plaintiff's young age represented a risk of having to perform the surgery again in the future. Tr. 631 ("Probable need for revision surgery was discussed given her young age and how the outcomes from the second surgery are not as predictable from the first surgery."). Although the Commissioner argues Dr. Ulmer's physical examinations were "generally normal," neither the ALJ nor the Commissioner are certified medical experts, and neither offers a persuasive account nor identifies to contrary evidence, of why their interpretation of Dr. Ulmer's examination and radiographic findings is more reliable than the Dr. Ulmer's. Tr. 29-30; Def.'s Br. 9-10; See

OPINION & ORDER - 10

Richardson v. Perales, 402 U.S. 389, 408 (1971) ("The trial examiner is a layman; the medical adviser is a board-certified specialist. He is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner."). Further, the ALJ's finding that Dr. Ulmer only infrequently treated Plaintiff is not supported by substantial evidence. Dr. Ulmer treated Plaintiff three times in 2008 and 2009, at least six times in 2010 and 2011, and he continued to treat her after the adjudicative period. Tr. 359, 360, 361, 362, 363, 506, 626.

Finally, despite the ALJ's statement that Dr. Ulmer "only treated the claimant for her knee issues," the doctor's treatment records reflect that he also treated her for hand complaints. For instance, in August 2009, Dr. Ulmer noted that Plaintiff had daily pain and triggering in her right hand, with "tenderness over the MCP joint volar index and long on her right hand." Tr. 642. The doctor further noted that, "[r]egarding her right hand trigger finger, we discussed the natural history of this and etiology as well as treatment going forward." Id. One year later, Dr. Ulmer was still noting that Plaintiff's "right hand triggers." Tr. 641. He indicated they "discussed the options going forward including repeat injections and/or surgical release." Id. Accordingly, the Commissioner's contention that there was no reasonable basis for Dr. Ulmer's manipulative and postural limitations unassociated with knee complaints lacks merit. Def.'s Br. 10. For these reasons, the Court cannot uphold the ALJ's rejection of Dr. Ulmer's medical opinion.

C.      Dr. LaPlante

The ALJ also accorded the opinion of treating physician Cheryl LaPlante, D.O. diminished weight, finding it was based on Plaintiff's subjective complaints rather than the objective medical record. Tr. 30. Dr. LaPlante served as Plaintiff's primary treating physician beginning in 2010, and provided a medical opinion statement in September 2013. Tr. 662-64. The doctor indicated Plaintiff's primary symptoms were knee pain, shortness of breath, spinal

pain, and generalized muscle pain. Tr. 662. Dr. LaPlante opined that Plaintiff was significantly limited in a number of physical areas, including lifting and carrying less than 10 pounds occasionally, no frequent lifting or carrying, standing/walking for 10-15 minutes at a time and one hour per workday, and also limited push/pull, and limitations in reaching and manipulation. Tr. 663. She additionally opined Plaintiff would be unable to maintain adequate concentration for 20% of a standard workweek, and would miss two or more days per month. Tr. 664.

The ALJ discredited Dr. LaPlante's assessment, noting that it was not supported by objective medical evidence, was based "almost entirely" on the claimant's subjective allegations, because "there is no medical evidence to support limiting the claimant manipulatively during the period at issue in this case." Tr. 30. However, the ALJ recognized that Plaintiff's carpal tunnel syndrome is a severe impairment for which she required a release surgery in 2009. Tr. 22. Relevant examinations between 2009 and 2011 reflected increased pain in her right hand beginning in early 2010, which precipitated trigger-point injections in May 2010. Further, and contrary to the Commissioner's assertion that "the treatment record reveals complaints regarding Plaintiff's left hand only after the relevant period," Dr. Ulmer and other physicians continued to note signs and symptoms regarding Plaintiff's left hand during throughout the adjudicative period. See Def.'s Br. 11; but cf. tr. 299, 300, 306-07, 311, 312, 313, 363. As the ALJ provided no other rationales for discrediting Dr. Laplante's opinion, and because the ALJ's stated rationale is not supported by substantial evidence in the record, the ALJ's evaluation of Dr. Laplante's opinion cannot be affirmed.

D.    Dr. Leopold

Mai Leopold, D.O. treated Plaintiff on September 28, 2010 to review various complaints and reevaluate her medication regimen. Tr. 373. Plaintiff argues the ALJ erroneously

OPINION & ORDER - 12

disregarded a chart note in which Dr. Leopold reported, "multiple joint pain, cervical and lumbar disc disease, fibromyalgia, symptomatic and disabling." Tr. 375. Although the ALJ did not allude to Dr. Leopold's statement in his decision, the Commissioner argues the omission does not constitute legal error because the statement is not a medical opinion, and alternatively, to the extent it is a medical opinion, it warrants little deference because it addresses a legal issue which is reserved to the Commissioner. Def.'s Br. 4-5.

It is legal error for an ALJ to neither explicitly reject the opinion of a treating physician, nor set forth specific and legitimate reasons for crediting another physician instead. Nguyen v. Chater, 100 F.3d 1062, 1064 (9th Cir. 1996); accord Garrison, 759 F.3d at 1012-13. Defendant first argues that Nguyen is inapposite because Dr. Leopold's note was not a medical opinion, but rather a record of Plaintiff's subjective complaints. Def.'s Br. 4. Medical opinions are defined as statements from a physician that "reflect judgments about the nature and severity of [an] impairment(s), including . . . symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1). Although the ALJ mentioned another passage from Dr. Leopold's chart notes in his decision, the Court has no path to discern how the ALJ interpreted the comment of "symptomatic and disabling" fibromyalgia pain. See tr. 28. When the agency's path cannot be reasonably discerned on an issue material to the Commissioner's ultimate disability decision, the proper course is typically to remand, which is why, at least in part, the Ninth Circuit requires ALJs to provide explicit reasons for rejecting medical opinions. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014). Given these related doctrines, and considering that Dr. Leopold's statement is arguably a judgment about the nature and severity of Plaintiff's fibromyalgia

impairment, the Court declines to assume the chart note does not constitute a medical opinion simply because the ALJ did not mention it.

Defendant further argues that the medical opinion should not be accorded substantial weight because it concerns an issue specifically reserved to the Commissioner. In support, Defendant cites Social Security Ruling ("SSR") 96-5p for the proposition that medical source opinions about whether an individual is disabled or unable to work cannot be given "special significance" because they are administrative, rather than medical, conclusions. See SSR 96-5p, 1996 WL 374183, at *5. Defendant, however, overlooks another key passage in SSR 96-5p, which states that "such opinions on these issues must not be disregarded." Id. Similarly, SSR 96-5p also states that "[t]reating source opinions on issues reserved to the Commissioner will never be given controlling weight. However, the notice of determination or decision must explain the consideration given to the treating source's opinion(s)." Id. at *6. Accordingly, even if the ALJ chose to disregard the passage at issue as either merely a restatement of a subjective symptom allegation, or as a finding on an issue reserved to the Commissioner, the ALJ was required to provide some explanation. Garrison, 759 F.3d at 1012-13, SSR 96-5p, at *5. The error is not harmless considering the ALJ also rejected other corroborating evidence including Plaintiff's allegations as to the severity and limiting effects of her fibromyalgia, and the opinions of a number of other treating physicians who also found Plaintiff's pain was more limiting than the ALJ ultimately concluded. For these reasons, the ALJ's failure to discuss Dr. Leopold's assertion constitutes legal error.

E.    Dr. Lewis

Michael Lewis, M.D., signed off on spirometry test results on September 6, 2011. Tr. 540. Plaintiff argues the test results ought to have directed a finding that Plaintiff meets Listing

3.02 for Chronic Obstructive Pulmonary Insufficiency. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02A. Listing § 3.02A requires objective evidence of a forced expiratory volume in the first second of a forced expiratory maneuver ("$FEV_1$") less than or equal to a value set forth in the listings, considering a claimant's height, age, and gender. Id. Dr. Lewis reported: "FEV1/FVC of <0.70 and an FEV1 50-79% of predicted . . . ." Tr. 540. The doctor did not provide any explicit opinion that Plaintiff met or equaled a listing, nor did the doctor express any judgment about the tests, other than to note the results reflected "moderate obstruction." Tr. 540. As such, it is unclear whether the test result constitutes a medical opinion at all. Even assuming the result does constitute Dr. Lewis' medical opinion, Plaintiff's argument is not persuasive: as the Commissioner explains, the metric listed by Dr. Lewis ("FEV1/FVC") is different than that of § 3.02A ("$FEV_1$").[2] Def.'s Br. 5-6. The Court is satisfied with the Commissioner's explanation of why the metric Dr. Lewis identified is related, but not analogous to, that of Listing § 3.02A, and notes that Plaintiff's reply is not responsive to the Commissioner's argument on the issue. See Pl.'s Reply 4-5. Accordingly, Plaintiff's assignment of error as to Dr. Lewis is unavailing.

II.    Plaintiff's Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing

---

[2] In order to meet Listing § 3.02A or B, the parties agree a person of Plaintiff's height and gender must have a $FEV_1$ of 1.15 or lower, or an FVC of 1.40 or lower. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 3.02A, B. Plaintiff argues that an "FEV1/FVC" of less than 0.70 is sufficient to establish an $FEV_1$ of 1.15. Pl.'s Br. 11; Pl.'s Reply 4-5. However, as shown elsewhere in the record, "$FEV_1$", "FVC", and "$FEV_1$/FVC" represent three different metrics, and Listing § 3.02A does not include a qualifying value for "$FEV_1$/FVC". See tr. 519, 624; 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 3.02A, B.

so." Pursuant to SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16–3p, at *1; also compare SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In Andre v. Colvin, 6:14-cv-02009-JE (D. Or. Oct. 13, 2016) I recently concluded that, for this reason, retroactive application of the new SSR is appropriate. See Smolen v. Chater, 80 F.3d 1274, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993)) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively). The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." Id. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or

her symptoms and the evidence in the record that is relevant to the individual's impairments." Id. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" Id. at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." Id.

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

Plaintiff testified that she has severe allergies and asthma that limits her exertional abilities, and that she suffers pain from a combination of fibromyalgia, spinal arthritis, bilateral knee arthritis, and carpal tunnel syndrome. Tr. 46-47. She asserted she was unable to fully turn left or right, look up to the sky, stoop or squat, or walk for more than 15 minutes at a time. Tr. 46. She further attested to anxiety and depression, with associated impairment regarding concentration and focus. Tr. 47. The ALJ determined Plaintiff's testimony was only partially credible, and accorded her "statements and reports" little weight. Tr. 27. Plaintiff explained that

in November 2011, she became essentially bedridden and her mother needed to assist her with basic self-care activities. Tr. 49-50. The ALJ found Plaintiff only partially credible, and therefore accorded her testimony little weight. Tr. 26.

Plaintiff first assigns error to the ALJ's characterization of the efficacy of her medications. Tr. 27; Pl.'s Br. 17. Specifically, the ALJ noted that Plaintiff was tolerating her medications without side effects on March 29, 2010, medication kept Plaintiff's pain manageable on October 1, 2010, and her pain was well-controlled overall on December 22, 2010. Tr. 27. Plaintiff argues that even when her medications were helpful, she was nonetheless incapable of performing regular work due to her symptoms. Indeed, the chart note from the March 29, 2010 clinic visit noted she was tolerating her diabetes medication, but Plaintiff also reported "significant pain from fibromyalgia that is often disabling and has kept her from being able to return to the work force." Tr. 378. At the October 2010 visit mentioned by the ALJ, Plaintiff reported doing well "with higher doses of Neurontin and Lyrica in the past," but she had to lower those dosages because of side effects. Tr. 297. Plaintiff also reported "diffuse pain throughout her body" and that she had "other symptoms" of "fibromyalgia type pain." Id. On December 22, 2010, the treating physician reported Plaintiff's "overall pain" was "well-controlled," but she was still taking four Percocet pills per day at that time in addition to Oxycontin tabs, which were causing nausea. Tr. 341. Even so, Plaintiff subsequently reported a "higher level of pain" at her next visit the following month (tr. 343), and by February 2011, she continued to report diffuse pain rated 7/10 (tr. 347), although her physicians continued to encourage her to taper her opioid use.

In order to discredit subjective symptom testimony, the ALJ "must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen,

80 F.3d at 1284 (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993)). Here, although the ALJ accurately noted that Plaintiff reported her medications were helping, the ALJ overlooked that Plaintiff continued to report pain due to fibromyalgia and arthritis, and appeared to disregard the fact that she continued to be prescribed powerful opioid medications. The ALJ identified a single instance where a physician reported "no adverse side effects," but at the same visit, the physician also noted that Plaintiff's opioid pain medication was causing nausea, and her subsequent dosage decrease resulted in greater pain. Tr. 343. As the Ninth Circuit recently noted, the "clear and convincing standard is the most demanding required in Social Security cases." <u>Garrison</u>, 775 F.3d at 1015 (citation omitted). Accordingly, the finding that Plaintiff's medication helped to some degree, despite continuing reports of substantial pain, does not rise to that rigorous standard.

The ALJ further discredited Plaintiff's testimony based on her reported activities of daily living ("ADLs"). Discussion of ADLs may support an adverse credibility finding in one of two ways: (1) in order to illustrate a contradiction in previous testimony, or (2) show that activities meet a threshold for transferable work skills. <u>Orn v Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ noted that on one occasion in December 2010, a physician reported Plaintiff had the ability "to do daily activities without significant limitations." Tr. 339. The ALJ contrasted that report with Plaintiff's testimony that she was often bed-bound, beginning in 2010 and becoming progressively worse throughout 2011. Tr. 28, 49-50. The ALJ further noted that despite her claim of severe disability, Plaintiff testified to retaining the ability to drive (including one trip to Seattle), shop once a month for food, occasionally use an exercise ball, and attend doctor's appointments, get medication from her pharmacy, and attend church. Tr. 28. However, as noted

above, throughout the relevant time period, Plaintiff continued to report pain in her back, neck, and knee, and was observed to have antalgic gait. Tr. 339, 341.

In finding Plaintiff's ADLs contradicted her pain and function allegations, the ALJ relied heavily on two discrete pieces of evidence: first, that Plaintiff testified she was in severe pain due to fibromyalgia which caused her to spend 16 hours in bed, and eventually required her to need assistance with basic activities, including bathing. Tr. 49-50. Second, there is a single chart note from December 2010 in which the treating physician reported Plaintiff was "able to do daily activities without significant limitations now that her pain is controlled." Tr. 339. The ALJ considered these two facts, and concluded that they were contradictory, and impugned Plaintiff's credibility. Tr. 27. While the ALJ's conclusion was not wholly irrational, it was not sufficiently based on specific evidence. As the Ninth Circuit has repeatedly stated, the mere fact that a claimant can carry out minimal activities, or that a claimant attempts to lead a normal life, should does not mean they are foreclosed from disability benefits. See, e.g., Orn, 495 F.3d at 639; Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) ("One need not vegetate in a dark room to be eligible for benefits.") (citation omitted).

Here, Plaintiff consistently testified that her ADLs were minimal: she could walk short distances when she was not feeling too much pain, but rarely left the house other than to attend doctor's appointments or go to the pharmacy, she could attend church, shop once a month, and prepare simple meals once or twice per week. See tr. 246-54. These minimal activities are not necessarily inconsistent with her allegation of being in bed up to 16 hours per day – indeed, she noted that 3-4 times per day, she rests for 3-6 hours, and performs tasks when she is up. Tr. 246. As such, the ALJ's general conclusions do not meet the rigorous specific, clear-and-convincing standard. Dodrill, 12 F.3d at 918; see SSR 16-3p.

The ALJ further supported his adverse credibility determination by finding Plaintiff received merely conservative treatment. Conservative treatment may be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). The ALJ's finding, in turn, was based on the fact that Plaintiff (1) "was not hospitalized for her impairments," (2) she and her physicians discussed surgery for her bilateral knee pain, but ultimately decided to postpone it, and (3) her fibromyalgia improved and her treatment course was "stable." Tr. 27.

Plaintiff first responds that although she did not have surgery during the relevant time period, her course of treatment included aggressive dosages of opioid pain-killers, including Percocet and Oxycontin. Indeed, as noted above, despite years of high doses of opioid medications, Plaintiff continued to report fairly high levels of pain. Although the Commissioner argues that Plaintiff was tapering her medications, her tapering did not appear to be due to diminished pain, but rather to "the risks of long-term high dose opiate therapy." Tr. 486. Thus, although a conservative course of treatment can undermine allegations of pain, it is not a proper basis for an adverse credibility finding where, as here, the claimant had a good reason to follow less aggressive treatment. Carmickle, 533 F.3d at 1162.

The ALJ also found Plaintiff's testimony at odds with her decision to postpone surgery. However, Plaintiff's decision not to pursue bilateral knee surgery appeared to be predominantly motivated by her young age. As explained previously, Dr. Ulmer reported that despite her bone-on-bone medical compartment arthritis in her left knee, he was concerned with "her young age and the issues this raises with possible joint replacement arthroplasty." Tr. 359. Dr. Ulmer further noted that potential arthroplasty was "a very reasonable, appropriate course to pursue." Tr. 638. However, because Plaintiff was young and would likely need revision surgery at a later

date, Dr. Ulmer ultimately decided to modify Plaintiff's leg braces, and to postpone surgery, "if possible." Tr. 359, 631, 632. As such, the discussions surrounding whether to immediately pursue knee surgery support, rather than detract from, Plaintiff's complaints of severe pain. The ALJ's finding is not clear-and-convincing.

The ALJ's last rationale is also deficient. As discussed above, although Plaintiff reported her fibromyalgia improved at times, she continued to require high doses of opioid medication. Moreover, even assuming plaintiff's treatment course was stable, the record does not reflect that she was pain-free, or, more importantly, that her testimony exaggerated the severity of her symptoms. The Ninth Circuit has repeatedly warned against isolating a quantum of evidence of improvement to support an adverse credibility finding. See Garrison, 759 F.3d at 1017 (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)). By doing so here, the ALJ disregarded Plaintiff's continuing reports of 7/10 pain, the valid reason she offered for attempting to taper her opioid use and to postpone knee surgery. The ALJ's rationales do not meet the clear-and-convincing standard.

III.   Remand

When a court determines the Commissioner's ultimate disability decision includes legal error and/or is unsupported by substantial evidence, the court may affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). However, where it is clear from the record that an ALJ's error was "inconsequential" to the ultimate decision, the error is considered harmless and the decision must be upheld. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1055-56 (9th Cir. 2006). Here, the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's pain allegations and the medical opinions

provided by Drs. Sherbin, Ulmer, LaPlante, and Leopold, which were harmful to the extent the RFC and step four determinations were adversely impacted. Because these errors potentially affected the ultimate determination of non-disability, remand is appropriate.

In determining whether to remand for immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. Garrison, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" Id. at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (citing Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the first requisite is met based on the ALJ's harmful legal errors discussed above. Neither party provided explicit argument with regard to whether the record in this case is complete, beyond Plaintiff's cursory assertion that "the evidence is sufficient to demonstrate [P]laintiff's eligibility without the need for further evaluation." Pl.'s Br. 19; see Def.'s Br. 16; Pl.'s Reply 8. The ALJ did not ask any hypothetical questions to the VE during the September 23, 2013 administrative hearing. Instead, the ALJ relied on VE testimony from the prior hearing in November 2009, explaining that the outcome would be the same because Plaintiff's RFC was

identical as that established in the prior case. Tr. 31. Accordingly, the Court reviewed the transcript from the prior hearing. Tr. 65-90.

Responding to a hypothetical question from the ALJ Donna Montano in November 2009, the VE indicated that a person with Plaintiff's RFC could perform her past relevant work as a receptionist. Tr. 79. Plaintiff's attorney then asked the VE whether a person who was expected to miss two or more days per month would be able to sustain competitive employment, to which the VE replied in the negative. Tr. 80. For the reasons that follow, no further development of the record is necessary.

The ALJ erroneously rejected the opinions of Drs. Sherbin, Ulmer, LaPlante, and Leopold. Drs. Sherbin, Ulmer, and LaPlante each separately opined that Plaintiff would be expected to miss two or more workdays per month due to her impairments. Tr. 515, 660, 664. Crediting those opinions as true, an ALJ would be compelled to find Plaintiff disabled on remand. Garrison, 759 F.3d at 1020. Additionally, the ALJ did not provide sufficient reasons to accord minimal weight to Plaintiff's symptom allegations, which may also be credited-as-true in such circumstances under Ninth Circuit case law. Garrison, 759 F.3d at 1020. Accordingly, the only remaining issue is whether any serious doubt remains as to whether Plaintiff was disabled throughout the adjudicative time period spanning November 2009 to December 31, 2011. Dominguez, 808 F.3d at 407.

The Commissioner does not articulate a specific argument as to the existence of serious doubt, other than to invoke the legal standard as set forth in Ninth Circuit case law. Def.'s Br. 16 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.") (quoting Brown-Hunter v. Colvin, 798 F.3d 749, 757-58 (9th Cir. 2015)). Accordingly, although a Court may exercise its discretion by remanding for further proceedings even where

the credit-as-true doctrine directs that erroneously discredited evidence be credited, the Court finds no reason to do so here. Contrary to SSA policy, the ALJ in this case disregarded the medical opinions of several acceptable treating sources who opined that Plaintiff was significantly limited due to a constellation of severe impairments. Instead, the ALJ adopted the contrary medical opinions of State agency reviewing physicians, who never met or examined Plaintiff in person. In so doing, the ALJ provided legally insufficient rationales for disregarding Plaintiff's own doctors' opinions, and moreover, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's symptom testimony, which reflected significant limitations that would likely preclude even sedentary work. As such, the Court has no reservation crediting the erroneously discredited testimonial and medical opinion evidence as true and remanding this case for immediate calculation and payment of benefits. Dominguez, 808 F.3d at 407.

## Conclusion

For the reasons discussed above, the Commissioner's ultimate decision was not based on substantial evidence and free of harmful legal error. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED for immediate calculation and payment benefits for the adjudicative period of November 14, 2009 to December 31, 2011.

DATED this 13th day of March, 2017.


  /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

OPINION & ORDER - 25